UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION


LATOYA LINDSEY,
     Plaintiff,


 -vs-                                   Case No.
                                       Hon.

CREDIT & COLLECTION SOLUTIONS, INC.,
FAUSTO G. TURRIN,
SUBSCRIBER SERVICES, INC.,
     Defendants,

---

Julie A. Petrik (P47131)
Lyngklip & Associates Consumer Law Center,
PLC
Attorney For Latoya Lindsey
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864


## COMPLAINT & JURY DEMAND


*Latoya Lindsey states the following claims for relief:*

### Jurisdiction

1. This court has jurisdiction under the FDCPA, 15 U.S.C. §1692k(d) and 28 U.S.C. §§1331,1337.

2. This court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims.

### Parties

3. The Plaintiff to this lawsuit is Latoya Lindsey who resides in Detroit, Michigan.

4. The Defendants to this lawsuit are as follows:

a.    Credit & Collection Solutions, Inc. ("CCSI") which is a corporation doing business in Michigan.

b.    Fausto G. Turrin ("Turrin") a debt collector doing business in Michigan.

c.    Subscriber Services, Inc. ("Subscriber Services") which is a corporation doing business in Michigan.

## **Venue**

5.    The transactions and occurrences which give rise to this action occurred in Wayne County.

6.    Venue is proper in the Eastern District of Michigan.

## **General Allegations**

7.    Ms. Lindsey is a young woman living with her mother and grandmother.

8.    Some time in calendar year 2009, Subscriber Services telephoned Ms. Lindsey to sell her magazines.

9.    The call was made by an agent or employee of Subscriber Services who identified himself as Jason.

10.    Ms. Lindsey answered the phone while she was at home.

11.    The sale was for goods in excess of $25.00.

12.    The call to Ms. Lindsey constituted a home solicitation for purposes of Michigan law.

13.    Subscriber Services used high pressure sales tactics including offering  that it would give Ms. Lindsey a watch and entry into the "Dream Come True" Sweepstakes.

14.    Ms. Lindsey initially accepted the offer to buy magazines.

15.    After hanging up, Ms. Lindsey spoke to her grandmother about the magazines and then determined that they were not within her budget.

16.    Within hours of the first phone call, Ms. Lindsey called Subscriber Services back and told them that she cancelled and would not take the magazines.

17.    This was an effective cancellation under the Michigan Home Solicitations Sales Act ("MHSSA").

18.    When she called, Subscriber Services told Ms. Lindsey that she could not cancel and that she was responsible for payment.

19.    Under the MHSSA, a consumer has the right to cancel a sale.

20.    Subscriber Services misrepresented Ms. Lindsey's  right to cancel the sale under the MHSSA.

21.    At no time did Subscriber Services present to Ms. Lindsey and obtain Ms. Lindsey's signature to a written agreement or offer to purchase in compliance with the MHSSA.

22.    Subscriber Services did not provide Ms. Lindsey with the notices required by the MHSSA.

23.    In spite of Ms. Lindsey's cancellation, Susbcriber Services  began sending Ms. Lindsey unsolicited magazines.

24.    Subscriber Services then sent Ms. Lindsey an invoice for the magazines for 15 monthly payments of $79.95 (for a total of $1199.25).

25.    Ms. Lindsey did not pay the invoice.

26.    Subscriber Services took in excess of $70.00 from her electronic payroll card in payment on the bogus account.

27.    Subscriber Services then began calling Ms. Lindsey on a daily basis demanding that she pay.

28.    In those calls, Ms. Lindsey told Subscriber Services that she should not have to pay because she cancelled the magazines.  She also told Subscriber Services she didn't want the

magazines and to stop sending them to her.

29. Subscriber Services continued to place those calls despite Ms. Lindsey's dispute.

30. Some time in 2009, Subscriber Services turned Ms. Lindsey's bogus account over to CCSI.

31. CCSI immediately began a campaign of harassment in order to pressure Ms. Lindsey into paying the bogus account.

32. CCSI told her that she needed to pay or they would take her to court.

33. CCSI did not take her to court and did not intend to take her to court.

34. CCSI's statement constituted a threat to take action that it did not intend to take

35. Ms. Lindsey consistently disputed the debt, told CCSI that she should not have to pay as she had cancelled the magazines and requested that CCSI stop calling her.

36. Ms. Lindsey requested CCSI to cease communications.

37. CCSI ignored Ms. Lindsey's requests to be let alone.

38. Rather, CCSI called Ms. Lindsey up to three times in a week and on some days, multiple times, and in doing so, cause Ms. Lindsey's telephone to ring repeatedly and/or continuously with the intent to annoy, abuse, or harass her at the called number.

39. CCSI sent Ms. Lindsey a collection letter stating that she owed a past due amount of $479.70 and a payment in full of $1, 119.30 and demanding that she pay.

40. Ms. Lindsey owed nothing on the account and its statement that she did constituted a false and/or misleading representation and an attempt to collect amounts not expressly authorized by agreement or permitted by law.

41. CCSI continues to telephone Ms. Lindsey calling her repeatedly and on some occasions, multiple times in a day.

4

42.    CCSI continues to threaten to take legal action against Ms. Lindsey if she does not pay making such a threat on or about January 6, 2010.

43.    At some point, the bogus account was turned over to another collector, Fausto G. Turrin.

44.    In a letter dated October 16, 2009, Turrin stated there was an amount past due of $479.70.

45.    Ms. Lindsey owed nothing on the account and its statement that she did constituted a false and/or misleading representation and an attempt to collect amounts not expressly authorized by agreement or permitted by law.

46.    The October 16, 2009 collection letter failed to include a notice of Ms. Lindsey's right to dispute the debt under 15 U. S. C. § 1692g.

47.    Turrin failed to provide Ms. Lindsey of her rights under 15 U. S. C. § 1692g within 5 days of its initial communication with her.

48.    Turrin or his representative or agent called Ms. Lindsey and demanded that she pay.

49.    Ms. Lindsey told Turrin that she cancelled the magazines and should not have to pay.

50.    Turrin continued to demand that she pay by sending subsequent collection letters which stated that she owed money on the account.

51.    Ms. Lindsey owed nothing on the account and Turrin's statement that she did constituted a false and/or misleading representation and an attempt to collect amounts not expressly authorized by agreement or permitted by law.

52.    In Turrin's letter dated November 17, 2009, Turrin threatened her with legal action in a court of competent jurisdiction.

53.    Turrin did not take her to court and did not intend to take her to court.

54.    Turrin's statement constituted a threat to take action that it did not intend to take

## COUNT I – Fair Debt Collection Practices Act (CCSI)

55.    Ms. Lindsey incorporates the preceding allegations by reference.

56.    At all relevant times CCSI – in the ordinary course of its business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

57.    CCSI is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

58.    At all times relevant to this complaint, CCSI sought to collect a "consumer" debt from Ms. Lindsey.

59.    CCSI actions to collect this alleged debt from Ms. Lindsey violated the provisions of the FDCPA including, but not limited to: 15 U.S.C. §1692d(5), e, e(2), e(5), e(10), f and f(1).

60.    Ms. Lindsey has suffered damages as a result of these violations of the FDCPA.

## COUNT II – Michigan Occupational Code (CCSI)

61.    Ms. Lindsey incorporates the preceding allegations by reference.

62.    CCSI is a "collection agency" as that term is defined in the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

63.    Ms. Lindsey is a debtor as that term is defined in M.C.L. § 339.901(f).

64.    CCSI 's foregoing acts in attempting to collect this alleged debt against Ms. Lindsey constitute violations of the MOC including but not limited to the following: M.C.L. § 339.915(a), (e), (f), (g), (n) and (q).

65.    Ms. Lindsey has suffered damages as a result of these violations of the MOC

66.    These violations of the MOC were willful.

## COUNT III – Fair Debt Collection Practices Act (Turrin)

67.    Ms. Lindsey incorporates the preceding allegations by reference.

68.    At all relevant times Turrin – in the ordinary course of its business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

69.    Turrin is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

70.    At all times relevant to this complaint, Turrin sought to collect a "consumer" debt from Ms. Lindsey.

71.    Turrin's actions to collect this alleged debt from Ms. Lindsey violated the provisions of the FDCPA including, but not limited to:15 U.S.C. §1692 e, e(2), e(5), e(10), f, f(1) and g.

72.    Ms. Lindsey has suffered damages as a result of these violations of the FDCPA.

## COUNT IV – Michigan Occupational Code (Turrin)

73.    Ms. Lindsey incorporates the preceding allegations by reference.

74.    Turrin is a "collection agency" as that term is defined in the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

75.    Ms. Lindsey is a debtor as that term is defined in M.C.L. § 339.901(f).

76.    Turrin's foregoing acts in attempting to collect this alleged debt against Ms. Lindsey constitute violations of the MOC including but not limited to the following: M.C.L. § 339.915 (a), (e), (f) and (q).

77.    Ms. Lindsey has suffered damages as a result of these violations of the MOC

78.    These violations of the MOC were willful.

## COUNT V – Michigan Home Solicitation Sales Act  (Subscriber Services )

79.     Ms.  Lindsey incorporates the preceding allegations by reference.

80.     This claim is brought pursuant to the Michigan Home Solicitation Sales Act ("MHSSA"),
        M.C.L. § 445.111 *et seq*.

81.     The sale of the magazines by Subscriber Services was a home solicitation sale under the
        MHSSA.

82.     Subscriber Services failed to provide a written agreement to Ms. Lindsey which included a
        cancellation notice.

83.     Ms.  Lindsey properly cancelled the transaction.

84.     Subscriber Services  has refused to honor the cancellation.

85.     Subscriber Services engaged in unfair and/or deceptive acts under MCL § 445.111c by
        misrepresenting and failing to disclose Ms. Lindsey's  right to cancel the sale.

86.     Subscriber Services  has violated the MHSSA.

87.     Ms.  Lindsey has been damaged as a result of Subscriber Services's  refusal to honor her
        cancellation.

88.     Ms.  Lindsey will continue to suffer damage to her credit unless this Court declares her
        rights and obligations following her proper cancellation of the home solicitation sale by
        Subscriber Services.

## COUNT VI – Michigan Collection Practices Act (Subscriber Services)

89.     Ms.  Lindsey incorporates the preceding allegations by reference.

90.     Subscriber Services has engaged in violations of the Michigan Collection Practices Act,
        including, but not limited to: M.C.L. §445.251(a), (e), (f), (g), (n) and (q).

91.    Ms. Lindsey has suffered damages as a result of these violations of the Michigan Collection Practices Act.

**COUNT VII – Request for Declaratory Relief (Subscriber Services)**

92.    Ms. Lindsey incorporates the preceding allegations by reference.

93.    Ms. Lindsey properly cancelled the sale under the MHSSA.

94.    Notwithstanding this fact, this account has been transferred to no less than two debt collectors.

95.    It is a common industry practice within the credit industry for debt collectors and credit companies to sell or transfer accounts which cannot lawfully be enforced, thus requiring consumers like Ms. Lindsey to repeatedly defend against non-judicial collection efforts and adverse credit reporting which can only be remedied after months – sometimes years – of credit disputes.

96.    Consequently, consumers like Ms. Lindsey may be subjected to repeated collection and credit reporting which damage her ability to obtain, credit, insurance or employment based upon a fraudulent account.

97.    Ms. Lindsey has no way of knowing when, where, or why the account in question may be transferred to another debt collector, or returned to Subscriber Services. Likewise, even in the absence of current efforts to collect, she has no way of knowing when or where any other company may appear and demand payment on this bogus account.

98.    To the extent that potential creditors, employers, insurers, and other businesses rely on consumer reports, the potential for harm from the account is great.

99.    Neither Subscriber Services, CCSI nor Turrin have brought suit on this bogus account.

9

100.   In the absence of an affirmative suit in which Ms. Lindsey could obtain an adjudication of her rights, the only conceivable means by which Ms. Lindsey can obtain proof that she does not owe this debt is through a declaration of her rights by this Court in relation to this account, as against all the known parties of interest.

101.   Because Ms. Lindsey cannot prevent the further transfer, sale, collection or reporting of the account, a declaration that she does not lawfully owe this debt is the sole means by which she can effectively avert further harm to her reputation, employment opportunities and ability to secure credit.

102.   A declaratory judgment is necessary for Ms. Lindsey to clarify and settle the legal relations at issue concerning this bogus account, and provide relief from the uncertainty which arises from this controversy.

103.   Ms. Lindsey requests that this Court declare her rights as against Subscriber Services, CCSI and Turrin.

104.   Declaratory relief is available to litigants under the Declaratory Judgment Act, 28 U.S.C. § 2201 and F.R.Civ.P. 57.

105.   Likewise, such relief is also available under Michigan common law, Michigan statute, and the Michigan Court MCR 2.605.

**Demand for Jury Trial**

106.   Plaintiff demands trial by jury in this action.

**Demand For Judgment for Relief**

107.   *Accordingly, Ms. Lindsey requests that the Court grant:*

   a.       *Equitable relief under statute and common law, in the form of a declaration that the*

10

*amount sought by Defendants is not actually owed and an injunction prohibiting*

*further collection of those amounts.*

b.    *Actual damages for money wrongfully taken in payment of the bogus account and*

*other items including emotional distress, mental anguish, frustration, humiliation,*

*and embarrassment.*

c.    *Statutory damages.*

d.    *Treble damages.*

e.    *Statutory costs and attorney fees.*

Respectfully Submitted,


By:  s/ Julie A. Petrik
Julie A. Petrik (P47131)
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Attorney For Latoya Lindsey
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
JuliePetrik@Att.Net

Dated: March 19, 2010

11